```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
ISAEL SANCHEZ-MERCEDES,          :
                                 :
           Plaintiff,            :   Civil No. 3:16-cv-560(AWT)
                                 :
v.                               :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
           Defendant.            :
-------------------------------- x
```

## RULING ON MOTION TO DISMISS

The plaintiff, Isael Sanchez-Mercedes, brings a claim for negligence under the Federal Torts Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"). Defendant United States of America moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, the motion is being granted.

I.   **FACTUAL BACKGROUND**

The plaintiff, who is an inmate in the custody of the Bureau of Prisons ("BOP"), is presently incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). Following a right knee injury the plaintiff sustained in or about August 2013, the medical staff authorized him to use a cane for assistance while walking. The plaintiff had to climb and descend four levels of stairs to move to and from his housing unit at FCI Danbury, where inmates are subject

to strict time limits for moving from one area to another.  The plaintiff "depended on his cane to ensure he could move safely within the given limit[s]."  (Complaint (Doc. No. 1) at ¶ 12.)

On or about May 6, 2014, the plaintiff was walking from the recreational building to his housing unit with the assistance of his cane.  He had ten minutes to complete the move.  The plaintiff was stopped by Correctional Officer Patterson.  Patterson had on numerous previous occasions seen the plaintiff with the cane.  On this occasion, however, Patterson seized the plaintiff's cane and informed him that he still had to get back to his housing unit within the ten-minute time limit.

Despite the plaintiff's plea that he could not safely walk to his housing unit without his cane, Patterson did not allow him to keep it.  A copy of the Medical Duty Status Sheet ("MDSS") authorizing the plaintiff to have the cane was taped to the cane.  Patterson took the cane without checking the MDSS.  He threatened to write up the plaintiff for being "out of bounds" if he did not return to his housing unit within the ten-minute time limit.

As the plaintiff climbed the stairs to his housing unit, his knee gave out as he was almost at the top, causing him to fall.  The plaintiff was severely injured as a result.  That day, the cane was returned to the plaintiff.

On June 3, 2015, the plaintiff filed a Request for Administrative Remedy, which was denied on June 19, 2015.  On August 26, 2015, the plaintiff filed an Administrative Tort Claim, which was denied on October 8, 2015.  The plaintiff subsequently commenced this action on April 8, 2016.

## II. LEGAL STANDARD

"A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecommunications, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. See Makarova, 201 F.3d at 113.  In fact, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

3

**III. DISCUSSION**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The FTCA is a limited waiver of sovereign immunity by the federal government.  Here, the defendant contends that while the FTCA would otherwise apply, the discretionary function exception bars the plaintiff's claim.  The court agrees.

Pursuant to 28 U.S.C. § 2680(a), the FTCA's waiver of sovereign immunity does not extend to any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  The discretionary function exception in the FTCA is "a form of retained sovereign immunity.  As a result, the [FTCA's] waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions." In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 190 (2d Cir.2008).

The Supreme Court has applied a two-prong test to determine whether a function is discretionary.  See Berkovitz v. United States, 486 U.S. 531, 536–37 (1998).  First, a discretionary act must be involved such that there is "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991).

Discretionary acts include "day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." Fazi v. United States, 935 F.2d 535, 538 (2d Cir.1991).

Second, "even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322. "Because the purpose of this exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy ..., the exception protects only governmental actions and decisions based on considerations of public policy." Id. at 323.  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 324.

The facts alleged make it clear that the actions by Patterson at issue here were taken in the context of enforcement of a controlled movement policy and that the plaintiff needed his cane to move within the given time limits.  The court concludes that, looking at Patterson's alleged conduct in context, both prongs of the Gaubert test are satisfied here.

5

— A —

First, Patterson's decision to require the plaintiff to keep moving towards his housing unit during a controlled movement, after confiscating the plaintiff's cane notwithstanding the plaintiff's expressed concerns, involved "an element of judgment or choice," as required under the first prong of Gaubert. Gaubert, 499 U.S. at 322. The plaintiff points to no statute, regulation or agency guidance mandating a particular course of action under such circumstances. See Kelly v. United States, 241 F.3d 755, 760 (9th Cir. 2001) (finding that the challenged act was discretionary because the "plaintiffs point to no statute, regulation, or policy that mandates" a specific course of action). The government asserts that the only statute, regulation or agency guidance governing the BOP's obligations under the circumstances present here is 18 U.S.C. § 4042. "While . . . [§ 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty." Francis v. United States, No. 3:10CV1474 AWT, 2011 WL 3563146, at *6 (D. Conn. Aug. 12, 2011) (internal citations omitted). See also Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[T]he BOP retains sufficient discretion in the means it may use to fulfill [its duty under § 4042] to trigger the discretionary function exception.")

The plaintiff argues that Patterson's conduct was governed by the Inmate Discipline Program, BOP Policy 5270.09, and the Standards of Employee Conduct, BOP Policy 3420.09.  The plaintiff argues further that Patterson violated these BOP policies and that, under Indian Towing Co. v. United States, 350 U.S. 61 (1995), a negligent act "cannot be protected under the discretionary function exception by the fact that the violated policy itself was an exercise of a discretionary function." (Pl.'s Mem. in Supp. of Pl.'s Obj. to Def.'s Mot. to Dismiss (Doc. No. 12-1)("Opp.") at 3.)  These arguments lack merit.

First, in Indian Towing, the challenged conduct was the government's purported failure to properly maintain a light that it had exercised its discretion to operate.  Indian Towing did not involve the application or analysis of the discretionary function exception because, in that case, the government had conceded that that exception "was not involved . . . ."  Id. at 65.  In Gaubert, the Supreme Court clarified that "the Government did not even claim the benefit of the [discretionary function] exception [in Indian Towing] but unsuccessfully urged that maintaining the light was a governmental function for which it could not be liable."  499 U.S. at 326.  "[S]ubsequent decisions of the [Supreme] Court have all but disavowed Indian Towing as authority relevant to the discretionary function exception."  Baum v. United States, 986 F. 2d 716, 723 (4th Cir.

7

1993).  Thus, Indian Towing is inapposite and provides no support for the plaintiff's position.[1]

The plaintiff's argument also fails to the extent that it rests on a contention that "confiscation of unauthorized contraband is specifically regulated under the Inmate Discipline Program, Policy 5270.09 . . . ."  (Opp. at 4.)  The plaintiff contends that Patterson violated this policy because the plaintiff "was not made aware that he was violating any regulation, he received no such incident report, nor did he receive any further recommended disciplinary sanctions."  (Opp. at 5.)  However, BOP Policy 5270.09 was not triggered here.[2]  As the plaintiff acknowledges, he was "not . . . charged with any prohibited act" under BOP Policy 5270.09.  (Opp. at 4.)  Rather,

---

[1] In fact, the plaintiff's position that the defendant can be held liable for negligence in the performance of a discretionary act is inconsistent with the fact that the discretionary function exception applies "whether or not the discretion be abused."  28 U.S.C. § 2680(a).

[2] Assuming arguendo that the plaintiff were correct that BOP Policy 5270.09 applies and that Patterson violated this policy by failing to issue an incident report to the plaintiff, his claim would still fail.  The United States may be liable under the FTCA only where a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  The plaintiff's claim for negligence would be governed by Connecticut law and be required to satisfy four elements: "duty; breach of that duty; causation; and actual injury."  Carr v. United States, No. 3:02CV2100(DJS), 2004 WL 2381554, at *2 (D. Conn. Oct. 7, 2004).  Here, the plaintiff cannot demonstrate causation.  Patterson's failure to issue an incident report pursuant to BOP Policy 5270.09 was not the cause of the plaintiff's fall down the stairs.

to the extent the plaintiff chooses to focus solely or primarily on the confiscation of the plaintiff's cane as opposed to Patterson's insistence on enforcing the controlled movement policy after confiscating the cane, Patterson's conduct fell within the scope of BOP Policy 5580.08, Inmate Personal Property.  Under BOP Policy 5580.08, contraband is "material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution." (Ex. B to Def.'s Reply (Doc. No. 13-2) at 8.)  BOP Policy 5580.08 states that "staff shall seize any item which has been identified as contraband . . . in common areas of the institution."  (Id. at 9.)  It also outlines the steps to be followed upon the confiscation of contraband.  (Id. at 10-12.) The plaintiff does not contend there was any failure to follow those steps.

    The plaintiff also contends that the defendant is liable because Patterson violated BOP Policy 3420.09, Standards of Employee Conduct.  The plaintiff argues that BOP Policy 3420.09 "forbids employees from conducting themselves in a manner that . . . endangers the safety of inmates, give[s] an inmate an order that could risk the inmate's safety, recklessly disregard[s] rules governing seizures, or negligently violate[s] rules governing seizures."  (Opp. at 7.)  The plaintiff argues

9

that Patterson's confiscation of the cane was a violation of BOP Policy 3420.09.

The plaintiff's reliance on BOP Policy 3420.09 is misplaced.  As described by the plaintiff, implementation of that policy requires the exercise of judgment and discretion.  For example, the plaintiff does not identify in that policy a list of prohibited items that would endanger the safety of inmates.  "Where there is room for policy judgment and decision there is discretion."  Dalehite v. United States, 346 U.S. 15, 36 (1953).  General standards of conduct requiring that prison safety be ensured and that correctional officers avoid violating rules governing seizures leave ample room for judgment and discretion.  The plaintiff points to nothing in this policy that mandates a particular course of action under the circumstances that were present here.

— B —

The second prong of Gaubert is also satisfied here because Patterson's decision to enforce the controlled movement policy against the plaintiff notwithstanding the fact that he had confiscated the plaintiff's cane was "based on considerations of public policy."  499 U.S. at 323.  Because § 4042 "allows [Patterson] discretion, [its] very existence . . . creates a strong presumption that a discretionary act authorized by [it] involves consideration of the same policies which led to the

10

promulgation of the regulations." Id. at 324. Courts have previously concluded that a correctional officer's efforts to ensure prison security during controlled movement or to confiscate contraband involve considerations of public policy. See Ellis v. United States, 134 Fed. Appx. 483, 484 (2d Cir. 2005) (noting that the plaintiff did "not challenge the district court's correct determination that enforcement of the controlled movement policy falls within the scope of the discretionary function exception"); Ortiz v. United States, No. 01 CIV. 4665 (AKH), 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002) (decisions implicating "inmate safety" and "general prison security" involve policy considerations); Cohen v. United States, 151 F.3d 1338, 1344 (11th Cir. 1998) (the "endeavor of maintaining order and preserving security within our nation's prisons" is "inherently policy-laden . . ."); Janis v. United States, No. 1:06-CV-1613-SEB-JMS, 2009 WL 564207, at *13 (S.D. Ind. Mar. 4, 2009) (decision to confiscate contraband involves "policy considerations, including inmate and staff safety, security, and budget considerations (storage and space requirements, etc.)").

**IV. CONCLUSION**

Defendant's Motion to Dismiss (Doc. No. 11) is hereby GRANTED on the ground that the court lacks subject matter jurisdiction over this case.

The Clerk shall close this case.

It is so ordered.

Signed this 24th day of February 2017, at Hartford, Connecticut.

                                            /s/ AWT
                              Alvin W. Thompson
                      United States District Judge